HENRY W. LEMAN

v.

EDWIN SHERMAN ET AL.

</div>

1. WILL—APPOINTMENT OF TRUSTEE—INTENTION.—Where a will declared that "in case of the death, resignation, refusal or inability to act of said trustee, I hereby direct that a new trustee be appointed by the county court of said county (Cook) upon the application," etc., and the clause relating to such trustee's bond was as follows, "to file the same in the office of

the clerk of said court." *Construed* that the testator intended to confer the power upon the county court as a court, and not as an individual.

2. TRUSTS—PRIVATE INDIVIDUAL CONFERRING POWER ON COURT.—As the county court possessed no chancery powers, and had no authority given to it by law to act in the appointment of trustees in such a case, such power was invalid. It is not competent for a private individual to confer any power upon a court, as such, over any subject-matter as to which the law has conferred no power or jurisdiction.

3. CHANCERY JURISDICTION.—The county court having no jurisdiction by law of the proceedings to appoint a new trustee, such proceedings were void and the appointment not valid, and it was proper to resort to a court of chancery to make a new appointment, establish title and secure the complete execution of the trusts.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding. Opinion filed February 23, 1886.

Francis C. Sherman died November 7, 1870, in Chicago, where his property was situated, leaving as his widow Electa Sherman, and three children, to wit, Francis T. Sherman, George C. Sherman and Martha S. Marsh. He also left a last will and testament, of which all that is material to this case is as follows:

" I do give, bequeath and devise my real estate in said city of Chicago, known as the Sherman House property, and described as lots seven (7) and eight (8), in block thirty-four (34), in the original town (now city) of Chicago, in said county, with the hereditaments and appurtenances, to Joshua L. Marsh, of said city, as trustee, and his successors forever.

" In trust, however, for the following uses and purposes, and upon the following conditions: Immediately upon my death to take possession of said Sherman House property and collect and receive all the rents, issues and profits thereof then due or thereafter to become due; and upon the termination in any manner of the lease or any portion thereof, or upon any portion thereof becoming vacant, to rent the same to such person or persons, and upon such terms and conditions as he may think best, provided that no lease or demise shall be for a longer term or period than ten years.

"I do hereby authorize said trustee to insure said property as he may think best, and in case the same or any portion thereof shall be injured or destroyed by fire or otherwise, to repair or rebuild the same, and for that purpose to borrow money, if by him thought advisable or necessary, upon such terms and conditions and for such time and times and in such amounts as he may see fit; and to execute and deliver any and all necessary notes, bonds, mortgages, deeds of trust or other instruments in writing, to secure the payment of the same, upon said Sherman House property, and to renew or extend the time of payment of any such loan, or again borrow money for the payment of any such loan, or any I may have made on the same, and secure the same as aforesaid.

" After the payment of all taxes, rates and assessments legally levied, assessed or imposed upon said property, and all premiums for insurance, and all interest as it matures, that may become due upon money borrowed for the purchase, improvement, rebuilding or repairing of said property, or that may have been borrowed by me and secured on said property, and after paying all expenses necessary for taking care of my cemetery lot at Graceland cemetery, and keeping the same in a suitable and proper condition, not exceeding two hundred and fifty dollars per annum, which I expressly direct him to have done, and all reasonable charges and expenses attending the execution of this trust, I direct said trustee to appropriate the remainder of said rents, issues and profits as follows:

" Until the indebtedness hereinbefore referred to for the purchase, improvement, repairing or rebuilding said property shall have been fully paid I direct my said trustee to pay to my said wife the sum of six thousand dollars per annum, and to each of my children living the sum of three thousand dollars per annum, all payable quarter yearly, and the remainder to the payment of said indebtedness.

" After said indebtedness shall have been fully paid I direct said trustee to pay to my said wife, while living, one third of such remainder, and divide the remainder among my children equally ; and after her death to divide the whole of such remainder among my children equally.

"In case of the death of any of my said children the heirs of his or her body, if any, shall in all cases represent him or her and be entitled to his or her share.

"It is my desire and I hereby direct that my said trustee shall have, hold and manage said Sherman House property, entire and undivided, and appropriate the rents, issues and profits thereof in the manner hereinbefore specified, during the natural life of my said wife and children, and until the death of the last survivor of them, and until the youngest child of any and all of my said children shall become and be of the age of twenty-one years, and then convey the same to the heirs of my said children, the heirs of each child representing and being entitled to one equal share.

"*In case of the death, resignation, refusal or inability to act of said trustee, I hereby direct that a new trustee be appointed by the county court of said county, upon the application of any person interested, and the notice to all other persons interested, with all the powers of said original trustee;* and my trustee, before entering upon the duties of his trusteeship, shall enter into a bond with good and sufficient security, to be approved by said court, in such sum as said court may determine, payable to some one of my heirs for the benefit of all concerned, conditioned for the faithful performance of the duties of his trust, *and file the same in the office of the clerk of said court.*

"The provision hereinbefore contained in relation to my trustee giving a bond shall apply as well to my trustee herein named, as to *any* trustee hereafter appointed."

The testator, by a codicil to said will, directed that the compensation of any trustee under said will, for the performance of duties of any kind or description, should not exceed fifteen hundred dollars per annum.

Francis T. Sherman and George C. Sherman were nominated in said will as executors. Nov. 15, 1870, said will was admitted to probate and letters testamentary issued to said executors. Joshua L. Marsh, who was named in the will as the trustee of the Sherman House property, accepted the trust; and said Sherman House having been destroyed by the great

fire of October 8, 1871, he proceeded to borrow money on the real estate and rebuild the house. But July 23, 1875, said Marsh having resigned his trust, one George Taylor was, by the decree of the County Court of Cook county, appointed trustee in place of said Marsh; accepted, entered upon and continued in the performance of the duties of said trust, until August 15, 1881, when he deceased, leaving a wife and infant children. Electa, the widow of testator, and said George C. Sherman both died, the latter leaving no widow or issue. Francis T. Sherman and Martha S. Marsh aforesaid, were the only surviving children of said testator. But said Martha S. Marsh had two children living, viz., Ida Sherman and Edwin Sherman, and said Francis T. Sherman had four children living, to wit, Frances Ella, who was the wife of •Eben J. Marsh, Lulu M., the wife of F. J. Aldrich, Francis C. Sherman and Eaton G. Sherman.

After the decease of said Taylor, and September 2, 1881, the said Martha S. Marsh filed a petition in the nature of a bill in chancery, in said county court mentioned in said will, setting out said will, the resignation of said Joshua L. Marsh as trustee, the appointment of said George Taylor as his successor, the death of the latter, the situation of the trust estate, etc., and with prayer for summons, specific relief, and for general relief. All the beneficiaries were named as defendants, several being infants. A summons in the usual form in chancery was issued, directed to the sheriff, and by him served on the infants and all defendants found who had not appeared. Guardian *ad litem* was appointed by the court for the infant defendants, and such proceedings were had in the cause, that the court, finding all the material facts in the petition to be true, caused a decree to be entered appointing Henry W. Leman as trustee, upon condition that he execute and file a bond with the clerk of said court in the penal sum of $50,000, and as successor to said George Taylor, deceased, to take charge of, manage and control said Sherman House property, with all the powers given by said will to said original trustee, Joshua L. Marsh; and that the title to said property be vested in said Leman as such successor in trust.

Leman v. Sherman.

Said Leman qualified by giving the required bond, and entered upon the duties of the trust.

The service of said chancery summons was the only notice to the infant beneficiaries. There was no conveyance by Joshua L. Marsh, the trustee named in the will, to said George Taylor, who was appointed as his successor by said county court as aforesaid, July 5, 1883; the above named Edwin Sherman, son of said Francis T. Sherman, a grandson of the testator and one of the beneficiaries under the will, and who was a minor at the time of said appointment of said Leman, brought this bill in the Cook County Circuit Court, setting forth the foregoing and other facts, making all the other beneficiaries under said will parties defendant, as well as certain creditors who had loaned money to the trust estate, also said Joshua L. Marsh and the heirs of said George Taylor, deceased, for the purpose of having said circuit court determine whether or not the power purporting to have been given to the County Court of Cook county to appoint a new trustee was valid, the latter court having no chancery jurisdiction or authority given by law to act in such a case; whether, if valid, the power was well executed by the proceedings had in that behalf; also for the removal of said Henry W. Leman as such trustee, for reasons stated, and the appointment of another, and for general relief. Upon a hearing upon pleadings and proofs, the court below found that the said power of appointment of a new trustee, purporting to have been given by said will to said county court, was invalid for the reason that said court was vested with no authority given by the law to act in such a case; that therefore the supposed appointment of said Henry W. Leman was void, wherefore the court appointed a new trustee in place of said Leman, Hugh A. White, Esq., who duly qualified. Leman appealed from said decree to this court, and is the only party who has assigned error.

Mr. JAMES S. COCHRAN, for appellant; that the intent of the testator is the controlling principle; if the words of the testator, however inaccurately used, will, in the light of the statute, admit of a two-fold construction, one of which will render the power inoperative, and the other uphold it, the

Leman v. Sherman.

court will adopt the latter construction, cited Kindig v. Smith, 39 Ill. 306; DeKay v. Irving, 5 Denio, 655; Mason v. Jones, 2 Barber, 229; Pond v. Bergh, 10 Paige, 140; Mowatt v. Carow, 7 Paige, 339; Wigram on Wills, 127.

The power of appointment given to the county court by this will was valid and effectual: Morrison v. Kelly, 22 Ill. 610.

Mr. WILLIAM C. WILSON and Mr. DAVID L. ZOOK, for appellees; that jurisdiction which a court does not possess by law can not be conferred by consent, cited The Central Bank of Georgia v. Gibson, 11 Georgia, 453; Dodson v. Scraggs, 47 Mo. 285–289; Jeffries v. Harbin, 20 Ala. 387; Chapman v. Morgan, 2 Greene (Iowa), 374; Randolph County v. Ralls, 18 Ill. 26; Peak v. The People, 71 Ill. 278; Monroe County v. Budley, 51 Barbour, 493; Germound v. The People, 1 Hill, pp. 344, 345.

Jurisdiction can not be extended by contract: Beach v. Nixon, 5 Selden, p. 35; Lindsey v. McClelland, 1 Bibb, p. 262; Bents v. Graves, 3 McCord, p. 280; Folby v. People, Breese, p. 31.

The county court having no jurisdiction conferred by law, over the subject-matter and there being no power to confer such jurisdiction by consent, appearance or contract, the appointment by the court was void: McCleary v. McLain, 2 Ohio, 368; Shaw v. Paine, 12 Allen, 293.

As to the power of a court of chancery to make appointment: 2 Sugden on Powers, 506; Tiffany & Bullard on Trustees, 376–8; Davies 7th Eng. Law & Eq. R., 8–161; Branson v. Branson, 48 How. Prac. 489.

McALLISTER, J. After much consideration of the matter we are of opinion that the clause of the will in question respecting the appointment of a new trustee does not admit of the construction that the testator intended to give the power to the individual who might, for the time being, happen to be the judge of the county court, but his intention was to confer the power upon the county court as a court, a

judicial body, having a clerk, who kept the records of such court.

The proposition does not admit of controversy or discussion, that the County Court of Cook county possessed no chancery powers, and had no authority, given to it by law, to act in the appointment of trustees in such a case. The question, therefore, arises and is directly involved in this case, whether the supposed power in question was a valid power, or in other words, whether it is competent for a private individual to confer any power upon a court as such, over any subject-matter, as to which the law has conferred no power or jurisdiction. It is a familiar rule, and one as to which all the authorities agree, that consent can never give to a court jurisdiction of the subject-matter. *That* must be given by the law, or it does not exist. So, it must follow, that it is not in the power of a testator to confer upon a judicial tribunal a jurisdiction which is not conferred by law. Shaw v. Paine, 12 Allen, 296. In that case the power was given to an individual described as the judge of probate for the time being, like the case of Pool v. Potter, 63 Ill. 533.

In Morrison v. Kelly, 32 Ill. 610, the deed of trust gave the power of appointing a new trustee to the court of chancery, as a court. That court having full jurisdiction over the subject-matter, the power was held to be valid. Mr. Justice Walker, in delivering the opinion of the court, used this language : " It will not be contested that a grantor conveying to a trustee, may confer a power upon an officer, as the chief executive of the State, a circuit judge, a probate judge, *or upon any court of record*, the power to appoint a trustee, in the event of the death of the trustee named in the deed." That expression " any court of record," is invoked by appellant's counsel as authority for holding the power as properly conferred by the testator upon the county court in this case. The case in which the learned judge used the expression, was one where the court, in which the power was conferred, had jurisdiction of the subject-matter given it by the law. The observation was wholly impertinent and unnecessary as regarded that case, and is, for that reason, not of binding au-

thority.   With all deference to the learning and ability of the judge who made it, we think, upon principle, it can not be the law.

Every question of this nature ought to be susceptible of solution, upon some elementary grounds.   The very great pressure of business to which we are subject, and the necessity for a speedy decision by this court, have prevented us from making the thorough investigation which the importance of the question demands, and, if this were a court of last resort, it ought to receive at our hands.

It is apparent from the early discussions as to who may properly be the donee of a power, and when the power was valid, that such donee was regarded in the same light as an attorney in fact, or an agent.   Thus in Hearle v. Greenback, 3 Atk. 675, the question was in what cases, if any, a valid power of appointment could be conferred upon an infant.   The arguments of counsel are very instructive.   Lord Chancellor Hardwicke, as was usual with him, brought the case down to elementary principles, and held, that an infant could not exercise a power which involved prudence or discretion, before he arrived at years of discretion; that where a testator, by will, provided for the execution of a power by an infant and the power was coupled with an interest, it was void, because no private person could give to such infant a capacity which the law denied.   S. C. 1 Ves. Sen. 298; Co. Litt. 52 a.

It is, however, the settled law, that a mere naked or collateral power may be conferred upon an infant, because the law recognizes in him after arriving at years of discretion, a natural competency.   But an idiot, lunatic or other person otherwise *non compos mentis*, can not do any act as an agent or attorney binding upon the principal; because they have not any legal discretion or understanding to bestow on the affairs of others, any more than upon their own.   Story on Ag. § 7.

Kent, Vol. 4, p. 325, says : "Every person capable of disposing of an estate actually vested in himself, may exercise a power, or direct a conveyance of the land.   The rule goes farther, and even allows an infant to execute a power simply collateral, and that only."   In the execution of a naked, or col-

lateral power, the law recognizes no want of legal capacity. But when he undertakes to exercise a power coupled with an interest, there being a want of legal capacity, the power is void.

The appointment of a new trustee in a case like that in hand, necessarily involves the exercise of prudence and legal discretion.

The reason why a person *non compos mentis* can not exercise a power is, that not possessing a *natural* and therefore not a legal capacity, he is incapable of exercising a legal discretion. The reason why an infant can not exercise a power coupled with an interest is the want of legal capacity to do the particular thing, and the law denying him such capacity it is not in the power of a testator to confer it by any words he may write in his will.

We can readily comprehend the reason why a court of chancery can exercise a power created by a deed or will. The law has conferred upon such court full and complete jurisdiction over the subject-matter. It is thereby endowed with a faculty or capacity for the exercise of a legal discretion as respects that subject-matter. But we can not understand how, upon any known elementary principles, a court which is clothed by the law with no power, authority or jurisdiction, with reference to or over the subject-matter of a power, can be said to possess any faculty or capacity for the exercise of a legal discretion in respect to that subject-matter; because a court is purely the creature of law. It is an institution of the law. It possesses no natural faculties, and its legal capacity is such only as the law has given to it. If, therefore, the law had not conferred upon the county court a legal faculty or capacity for the exercise of a legal discretion in such a case as this was, it is entirely clear that it had none because the testator could confer none by his will. That the law had given the county court no jurisdiction or authority in such a case is not only not questioned but expressly conceded by appellant's counsel.

It follows from these views that we agree with the chancellor who decided the case below, that the county court hav-

ing no jurisdiction by law, of the proceedings to appoint appellant, those proceedings were void and the appointment not valid. The nature of the trusts, the great value of the property, the circumstances, all conspire to render it eminently proper to resort to a court of chancery to make a new appointment, establish title and secure the complete execution of the trusts. Hill on Trustees, 4 Am. Ed. 298, 302, *190 *et seq.*

But aside from the position that the decree below was wrong, appellant's counsel insist that the chancellor should have appointed appellant as trustee. The decree operates as a vindication of the motives and conduct of appellant, while acting as trustee under the proceedings of the county court; but we can discover nothing in the circumstances which clothed him with any superior, equitable right to appointment by the chancellor. The trusts were created for the benefit of those named as beneficiaries, and not for the benefit of any person as trustee. Besides, the law has confided the matter of choosing and appointing trustees in such cases to the sound discretion of the chancellor. Unless there is a palpable abuse of such discretion, an appellate court can not interfere. We perceive no evidence of abuse. The person appointed is a reputable member of the bar, possessed of excellent business qualifications. He was acceptable to all the adult beneficiaries save one only, and appellant was acceptable to none but that one. We think the decree below should be affirmed.

<div align="right">Decree affirmed.</div>